**CASE NO. 26-10063-CC**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

---

**CRISTIAN DIAZ-PIEDRA,**

**Appellant,**

**v.**

**FANEUIL ENTERTAINMENT, INC., ET. AL.,**

**Appellee.**

---

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 25-60953-CIV-SMITH**
**HONORABLE RODNEY SMITH**

---

# AMENDED INITIAL BRIEF OF APPELLANT

---

Earl I. Higgs, Jr.
**HIGGS LAW, P.A.**
1060 Woodcock Road, Ste. 109
Orlando, Florida 32803
Tel: (407) 459-7921
ehiggs@higgslawpa.com
ehenry@higgslawpa.com

## INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

In accordance with Rule 26.1 and the Federal Rules of Appellate Procedure, and Rules 26.1-1 and 26.1-2 of the Rules of the United States Court of Appeals for the Eleventh Circuit, counsel for Cristian Diaz-Piedra ("DIAZ-PIEDRA), give notice of the following parties or corporations that have an interest in the outcome of this case or appeal:

Carlos Leach, Esq. – counsel for Plaintiff

Cristian Diaz-Piedra – Plaintiff

Earl I. Higgs, Jr. – counsel for Appellant

Eric Langan – Defendant

Faneuil Entertainment, Inc., d/b/a CHEETAH III – Defendant

Higgs Law, P.A. – counsel for Appellant

Jose R. Rodriguez – Defendant

Luke Charles Lirot, P.A. – counsel for Defendant/Appellee

Luke Lirot, Esq. – counsel for Defendant/Appellee

Rachel Ricks, Esq. – counsel for Defendant/Appellee

Rodney Smith – United States District Judge

Ryan J. Glover, Esq.- former counsel for Plaintiff

The Leach Firm, P.a. - counsel for Plaintiff

The Set Enterprises, Inc. – Defendant

## CORPORATE DISCLSOSURE STATEMENT

Counsel for DIAZ-PIEDRA certifies that no publicly traded company or business entity apart from that listed above has an interest in the outcome of this case or appeal.

*<u>/s/ Earl I. Higgs, Jr.</u>*
Earl I. Higgs, Jr.

## STATEMENT REGARDING ORAL ARGUMENT

DIAZ-PIEDRA requests oral argument and asserts that the decisional process will be significantly aided by oral argument. The issues concerning the six factors in determining whether an individual is an employee or independent contractor under the FLSA are overlapping and requires the Court to considered the totality of all the facts, which cannot be fully conveyed in writing. Oral argument will enable the Court to receive more clarity on the overlapping facts and aid the Court in determining whether DIAZ-PIEDRA was an employee under the FLSA.

## TABLE OF CONTENTS

**INTERESTED PERSONS AND** .......... ii

**CORPORATE DISCLOSURE STATEMENT** .......... ii

**CORPORATE DISCLSOSURE STATEMENT** .......... iii

**STATEMENT REGARDING ORAL ARGUMENT** .......... iv

**TABLE OF CITATIONS** .......... viii

**STATEMENT OF JURISDICTION** .......... 1

**STATEMENT OF THE ISSUES** .......... 3

**STATEMENT OF THE CASE** .......... 4

**SUMMARY OF ARGUMENT** .......... 9

**ARGUMENT** .......... 12

**I. THE DISTRICT COURT'S DECISION MUST BE REVERSED BECAUSE THE RECORD EVIDENCE DEMONSTRATED DIAZ-PIEDRA WAS AN EMPLOYEE UNDER THE FLSA** .......... 12

**SUMMARY JUDGMENT STANDARD** .......... 13

**THE FAIR LABOR STANDARDS ACT AND ITS APPLICATION** .......... 15

**A. THE CLUBS' INVESTMENT IN THE EQUIPMENT FOR DIAZ-PIEDRA TO PERFORM HIS JOB WAS MORE SIGNIFICANT THAN DIAZ-PIEDRA's AND DEMONSTRATED DIAZ-PIEDRA WAS AN EMPLOYEE UNDER THE FLSA**....................19

**B. NO SPECIAL SKILLS WERE REQUIRED FOR DIAZ-PIEDRA TO PERFORM AS A DJ** ....................22

**C. BECAUSE THE CLUBS WERE DIAZ-PIEDRA's ONLY SOURCE OF INCOME, DIAZ-PIEDRA DID NOT WORK FOR ANY OTHER EMPLOYER AND DIAZ-PIEDRA WORKED EXCLUSIVLEY AND CONTINUOUSLY FOR THE CLUBS DURING THE ENTIRE DURATION OF HIS EMPLOYMENT, DIAZ-PIEDRA WAS AN EMPLOYEE UNDER THE FLSA**....................24

**D. DIAZ-PIEDRA ROLE AS A DJ WAS INTEGRAL TO BOTH OF THE CLUBS' BUSINESS**....................27

**II. THE DISTRICT COURT'S DECISION MUST ALSO BE REVERSED BECAUSE THE CLUBS FAILED TO REBUT DIAZ-PIEDRA's EVIDENCE THAT DIAZ-PIEDRA WAS ENTITLED TO DAMAGES, INCLUDING MANDATORY LIQUIDATED DAMAGES** ....................28

**A. THE CLUBS FAILED TO PRESENT SUFFICIENT EVIDENCE TO REBUT DIAZ-PIEDRA's EVIDENCE THAT DIAZ-PIEDRA WAS ENTITLED TO DAMAGES UNDER THE FLSA** ....................30

**B. THE CLUBS ADMITTED IT DID NOT COMPLY WITH THE FLSA AND THEN FAILED TO COME FORWARD WITH ANY OTHER EVIDENCE TO REBUT DIAZ-PIEDRA's ENTITLEMENT TO MANDATORY LIQUIDATED DAMAGES** ....................32

**CONCLUSION**....................36

**CERTIFICATE OF COMPLIANCE** ......................................................................37

**CERTIFICATE OF SERVICE** ...............................................................................37

## TABLE OF CITATIONS

**PAGE(s)**

**CASES**

*Adickes v. S. H. Kress & Co.*,
398 U.S. 144 (1970)....................................................................................13

*Allen v. Board of Pub. Educ. For Bibb Cnty.*,
495 F.3d 1306 (11th Cir. 2007) .................................................................... 30, 31

*Allen v. Tyson Foods, Inc.*,
121 F.3d 642 (11th Cir. 1997) .......................................................................14

*Anderson v. Mt. Clemens Pottery Co.*,
328 U.S. 680 (1946)......................................................................... 30, 31, 32

*Beal v. Paramount Pictures Corp.*,
20 F.3d 454 (11th Cir. 1994) .........................................................................36

*Benshoff v. City of Va. Beach*,
180 F.3d 136 (4th Cir. 1999) .........................................................................16

*Bryant v. U.S. Steel Corp.*,
428 Fed.Appx. 895 (11th Cir. 2011)...................................................................35

*Bufkin v. Collins*,
604 U.S. 369 (2025)......................................................................................28

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)................................................................... 13, 14, 15, 36

*Clark v. Coats & Clark, Inc.*,
929 F.2d 604 (11th Cir. 1991) ......................................................................13

*Clincy v. Galardi South Enters., Inc.*,
808 F.Supp.2d 1326 (N.S. Ga. Sept. 7, 2011) ....................................................23

*DeLuca v. Atlantic Refining, Co.*,
176 F.2d 421 (CA2 1949) .........................................................................14

*Dybach v. State of Fla. Dep. Of Corrections*,
942 F.2d 1562 (11th Cir. 1991) ........................................................ 28, 29, 34

*Freund v. Hi-Tech Satellite, Inc.*,
185 Fed.Appx 782 (11th Cir. 2006) ...........................................................12

*Gordils v. Ocean Drive Limousines, Inc.*,
671 Fed.Appx. 731 (11th Cir. 2016) ...........................................................29

*Hanson v. Trop, Inc., d/b/a Pink Pony, Atlanta*,
167 F.Supp.3d 1324 (N.D. Ga. March 3, 2016) ............................ 17, 19, 23, 30

*Hernandez v. Schloss*,
2020 WL 1228644 (S.D. NY March 13, 2020) ........................................ 33, 35

*Hurst v. Youngelson*,
354 F.Supp.3d 1362 (N.D. Ga. Jan. 28, 2019) ......................................... 23, 26

*Kellogg v. Fannie's Inc.*,
467 F.Supp.3d 1296 (11th Cir. 2020) ............................................... 12, 16, 23

*Kinslow v. 5 Star Field Srvs. Grp., LLC*,
2021 WL 3493564 (N.D. Ga. Aug. 9, 2021) ............................................ 17, 30

*Larkin v. Envoy Orlando Holdings LLC,*
116 F.Supp.3d 1316 (M.D. Fla. July 28, 2015) ..............................................15

*Levinson v. Reliance Standard Life Ins. Co.*,
245 F.3d 1321 (11th Cir. 2001) ....................................................................12

*Manasco v. Best in Town, Inc.*,
2023 WL 5963434 (N.S. Ala. Sept. 13, 2023) ........................................... 21, 26

*Matsushita Electric Indust. Co., LTD. v. Zenith Radio Corp.*,
475 U.S. 574 ...............................................................................................14

*McFeeley v. Jackson Street, Ent., LLC,*
*(“Mc*Feeley I”), 47 F.Supp.3d 260 (D.MD. Sept. 15, 2014)...............................26

*McFeeley v. Jackson Street Ent., LLC,*
*(“Mc*Feeley II”), 825 F.3d 235 (4th Cir. 2016) .......................................... *passim*

*McGuire v. Hillsborough Cnty., FL*,
511 F.Supp.2d 1211 (M.D. Fla. Jan. 17, 2007) .......................................... 28, 33

*Mednick v. Albert Ents., Inc.*,
508 F.2d 297 (5th Cir. 1975) .......................................................................18

*MHG Hotels, LLC v. Studio 78, LLC*,
2021 WL 8894454, (S.D. Fla. May 25, 2021)...................................................35

*Morgan v. Family Dollar Stores, Inc.*,
551 F.3d 1233 (11th Cir. 2008) ....................................................................16

*Muston v. MKI Sys., Inc.*,
951 F.Supp. 603 (E.D. Va. Jan. 10, 1997).......................................................34

*Nieman v. National Claims Adjusters, Inc.*,
775 Fed.Appx 622 (11th Cir. 2019)........................................................... 12, 17

*Prickett v. DeKalb Cnty.*,
349 F.3d 1294 (11th Cir. 2003) ....................................................................16

*Reich v. Southern New England Telecomms. Corp.*,
121 F.3d 58 (2d Cir. 1997) ...........................................................................33

*Rodriguez v. Farm Stores Grocery, Inc.*,
518 F.3d 1259 (11th Cir. 2008) ....................................................................33

*Rosario v. 12425, Inc.*,
2014 WL 11910631 (S.D. Fla. July 21, 2014) ............................................ 16, 27

*Rutherford Food Corp. v. McComb*,
331 U.S. 722 (1947)........................................................................................15

*Sanders v. Elephant Butte Irrigation Dist. of New Mexico*,
112 F.3d 468 (10th Cir. 1997) ......................................................................34

*Santelices v. Cable Wiring and South Florida Cable Contractors, Inc.*,
147 F.Supp.2d 1313 (S.D. Fla. March 6, 2001) ......................................... *passim*

*Scantland v. Jeffry Knight, Inc.*,
721 F.3d 1308 (11th Cir. 2013) .................................................................. *passim*

*Sears v. Sheelar*,
2013 WL 2551323 (E.D Oregon June 4, 2013)..................................................14

*Septentriona Domus, LLC v. Keystone Morgan Real Estate*,
406 So.3d 1017 (Fla. 3d DCA 2025)................................................................14

*Shim v. Guechel-Pappas Trust*,
402 So. 3d 386 (Fla. 6th DCA 2024)...............................................................14

*Skyline Corp. v. NLRB*,
613 F.2d 1238 (5th Cir. 1980) ....................................................................35

*Soler v. G & U, Inc.*,
628 F.Supp. 720 (S.D. N. Y. 1986) ...........................................................34

*Tennessee Coal, Iron & R.R. Co. v. Muscodal Local No. 123*,
321 U.S. 590 (1944)........................................................................................16

*Thompson v. Sawyer*,
678 F.2d. 257 (D.C. Cir. 1982).......................................................................34

*Tony and Susan Alamo Foundation et. al. v. Secretary of Labor*,
471 U.S. 290 (1985)................................................................................ 16, 23

*Usery v. Pilgrim Equip. Co., Inc.*,
527 F.2d 1308 (5th Cir. 1976) .............................................................. *passim*

*Watts v. Club Madonna, Inc.*,
2018 WL 3412988 (S.D. Fla. June 25, 2018)..................................................27

*Yilmaz v. Mann*,
2014 WL 1018006 (S.D. Fla. March 17, 2014)........................................ 20, 23

**STATUTES**

28 U.S.C. § 1291 ..........................................................................................1

28 U.S.C. § 1331 ..........................................................................................1

28 U.S.C. § 1367 ..........................................................................................1

29 U.S.C. § 201-209.......................................................................................1

29 U.S.C. § 216 .......... 1

29 U.S.C. § 218(a) .......... 1

29 U.S.C. §§ 251-62 .......... 33

Article X, Section 24 of the Florida Constitution .......... 1, 3

§ 448.110, Fla. Stat. (2025) .......... 1, 3

**RULES**

11th Cir. R. 32-4 .......... 37

26.1-2 of the Rules of the United States Court of Appeals Eleventh Circuit .......... ii

Fed. R. App. P. 32(a)(5) .......... 37

Fed. R. App. P. 32(a)(6) .......... 37

Fed. R. App. P. 32(a)(7)(B)(i) .......... 37

Fed. R. App. P. 32(f) .......... 37

Fed. R. Civ. P. 56(a) .......... 13

Fed. R. Civ. P. 56(c) .......... 13, 15

Rule 26.1 and the Federal Rules of Appellate Procedure .......... ii

**REGULATIONS**

29 C.F.R. § 790.22(b)-(c)....................................................................................28

29 CFR 531.35 ...........................................................................................................1

## STATEMENT OF JURISDICTION

The district court had jurisdiction over this action under 28 U.S.C. § 1331. This statute provides that district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. DIAZ-PIEDRA filed suit against Faneuil Entertainment, Inc. d/b/a Cheetah III, The Set Enterprises, Inc. and Jose R. Rodriguez ("THE CLUBS")[1] for unpaid wages and liquidated damages under the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 201-209, 29 U.S.C. § 218(a), FLSA 16(b), 29 U.S.C. § 216 and 29 CFR 531.35.

DIAZ-PIEDRA also filed state law claims alleging THE CLUBS violated the Florida Minimum Wage Act, ("FMWA") § 448.110, Fla. Stat. (2025) and Article X, Section 24 of the Florida Constitution. (Doc. 33). Pursuant to 28 U.S.C. § 1367, the district court had jurisdiction over DIAZ-PEIDRA's state law claims because those claims were closely related to the FLSA claims. Because the issues in this case raised questions under federal law, and DIAZ-PIEDRA's state law claims are so closely related to the federal law claims, the district court had jurisdiction over this matter.

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, which grants appellate courts with jurisdiction over appeals from all final decisions of the district courts. On December 19, 2025, the district court entered its order

---

[1] For ease of reference, all Appellees/Defendants will collectively referred to as "THE CLUBS."

denying DIAZ-PIEDRA's Motion for Partial Summary Judgment and dismissed DIAZ-PIEDRA's case. (Doc. 62). On January 5, 2026, DIAZ-PIEDRA timely filed his notice of appeal. (Doc. 63).

## STATEMENT OF THE ISSUES

1. Whether the district court erred in denying DIAZ-PIEDRA's Motion for Partial Summary Judgment and dismissing DIAZ-PIEDRA's case when the record evidence demonstrated DIAZ-PIEDRA was an employee—and not an independent contractor of THE CLUBS—under the FLSA, § 448.110, Fla. Stat. (2025) and Article X, Section 24 of the Florida Constitution?

2. Whether the district court erred in denying DIAZ-PIEDRA's Motion for Partial Summary Judgment and dismissing DIAZ-PIEDRA's case when the record evidenced demonstrated DIAZ-PIEDRA was entitled to damages, including mandatory liquidated damages?

## STATEMENT OF THE CASE

Cristian Diaz-Piedra ("DIAZ-PIEDRA) worked as a Disc Jockey ("DJ") for Defendants, Faneuil Entertainment, Inc. d/b/a Cheetah III and Jose R. Rodriguez from August 2019 through November 13, 2024. (Doc. 33 at 7). During the same period, DIAZ-PEDRA, worked as a DJ for Defendant, The Set Enterprises, Inc., from August 2019 through October 2022. Defendants, Faneuil and Jose R. Rodriguez, operated the Cheetah's Gentlemen's Club located in Pompano Beach, Florida, and Defendant, The Set Enterprises, Inc. operated the Cheetah's Gentlemen's Club located in Hallandale Beach, Florida location. (Doc. 33 at 7-8).

At some point in 2022, Defendant, The Set Enterprises, Inc. was sold (the Hallandale Beach location) to a new owner. However, DIAZ-PIEDRA only worked for this new owner approximately two months. (Doc. 59-1 at 27-28). Prior to the sale, both the Pompano and Hallandale locations—and during the majority of DIAZ-PIEDRA's employment—had common ownership. (Doc. 55-3 at 15-16). For ease of reference, all Appellees/Defendants will be collectively referred to as "THE CLUBS" hereinafter.

DIAZ-PIEDRA began DJing when he was younger and believed it took a lot of skill to be a DJ. (Doc. 59-1 43-44). However, DIAZ-PIEDRA did not attend any school to become a DJ and was not required to have a license to perform as a DJ. Nonetheless, DIAZ-PIEDRA worked at different gentleman's clubs prior to working

for THE CLUBS. (Doc. 59-1 at 10-15). It is undisputed that both of THE CLUBS' locations classified DIAZ-PIEDRA as an independent contractor. (Doc. 33 at 8).

Despite being classified as an independent contractor, THE CLUBS exercised extensive control over DIAZ-PIEDRA's work. For example, THE CLUBS set the opening and closing hours. Both locations were open seven days a week. The Pompano location was open from 12:00 p.m. to 2:00 a.m. and the Hallandale location was open from 12:00 p.m. to 6:00 a.m. (Doc. 55 at 3). THE CLUBS established two shifts (day and night). The day shift DJ worked from 12:00 p.m. to 7:00 p.m. and the night shift DJ worked from 12:00 p.m. until close (2:00 a.m. or 6:00 a.m. depending on the location). (Doc. 55 at 3). DIAZ-PIEDRA worked four days each week: Wednesday, Thursday, Friday, and Saturday for the Pompano location and averaged two shifts per week totaling (14) hours per week at the Hallandale location. (Doc. 55 at 3; Doc. 59-1 at 27-29). THE CLUBS required DIAZ-PIEDRA to work his entire shift. If DIAZ-PIEDRA could not work his shift, DIAZ-PIEDRA was required to find another DJ to cover his shift. (Doc. 55 at 5; Doc. 55-3 at 38-40).

THE CLUBS handled all of the marketing for both locations through social media, radio and taxi. (Doc. 55 at 2-3; Doc. 61). Moreover, THE CLUBS maintained the building and owned the DJ booths in which DIAZ-PIEDRA played music. Although DIAZ-PIEDRA was required to provide his laptop, music and microphone

to DJ, THE CLUBS prohibited DIAZ-PIEDRA from playing certain types of music, including salsa or Spanish music, some rap or hip-hop. (Doc. 55-3-4). THE CLUBS purchased its own music licenses with BMI for $372.00 a month and ASCAP for $2,143.00 for the year. (Doc. 55-3 at 57-60). Notably, THE CLUBS paid the same amount for these licenses no matter how many DJs were using the licenses. (Doc. 55-3 at 60).

THE CLUBS also owned the speakers, sound system and PA system DIAZ-PIEDRA used to DJ at both locations and THE CLUBS purchased upgrades for the speaker system. (Doc. 55-3 at 60). All the wiring for the DJing equipment was installed by THE CLUBS such that all DIAZ-PIEDRA had to do was connect his microphone or laptop to commence work. (Doc. 55-3 at 60). Although DIAZ-PIEDRA was able to control the lights while he was DJing, THE CLUBS owned the lighting system and insured all of the equipment in event of fire or malfunction. (Doc. 55-3 at 61-62). DIAZ-PIEDRA

Because THE CLUBS classified DIAZ-PIEDRA as an independent contractor, he was not paid an hourly wage or salary. Instead, his income was derived entirely from tips the entertainers/dancers received from the customers. (Doc. 55 at 4). THE CLUBS required the entertainers to pay the DJs—including DIAZ-PIEDRA—ten (10%) of the amount the entertainers received from the customers, which typically was between $10.00 to $20.00 per entertainer per shift. (Doc. 39-1

at 1; Doc. 55-3 at 46-47; Doc. 55 at 4). THE CLUBS also set the prices the entertainers would charge the customers for dances. At the end of each of DIAZ-PIEDRA's shifts, he was required to surrender to THE CLUBS 10 % of the amounts DIAZ-PIEDRA received from each entertainer. On average, the amount DIAZ-PIEDRA had to surrender to THE CLUBS was $100 per shift. (Doc. 55 at 4; Doc. 55-3 at 47-48). And, at some point before DIAZ-PIEDRA was terminated, THE CLUBS unilaterally raised the percentage of the tips DIAZ-PIEDRA had to surrender from 10% to 20%. (Doc. 55 at 5; Doc. 55-3 at 55-57). DIAZ-PIEDRA's employment at THE CLUBS was his sole source of income and DIAZ-PIEDRA did not work for any other employer while working for THE CLUBS. DIAZ-PIEDRA tried to take control of his ability earn a profit by attempting to negotiate additional sums from the entertainers. (Doc. 55 at 4). However, DIAZ-PIEDRA was terminated and accused of "shaking down the girls" for additional money. (Doc. 55-3 at 26-27, 47, 55). Sometime after his termination, DIAZ-PIEDRA filed suit.

In his Amended Complaint,[2] DIAZ-PIEDRA alleged, *inter alia*, that THE CLUBS improperly classified DIAZ-PIEDRA as an independent contractor and failed to properly compensate him under the FLSA and Florida Law. (Doc. 33). As part of the Amended Complaint, DIAZ-PIEDRA estimated the number of hours and

---

[2] The original complaint was amended, in part, to remove a different defendant. The removal of that defendant is not germane to this appeal.

rate of pay for each of THE CLUBS' locations that improperly compensated DIAZ-PIEDRA for the work he performed. Doc. 33 at 2-3). THE CLUBS filed an answer and affirmative defense to the Amended Complaint contending it properly classified DIAZ-PIEDRA as an independent contractor and denied that DIAZ-PIEDRA was owed any compensation under the FLSA and Florida Law. (Doc. 45).

The parties then engaged in discovery, which included the depositions of THE CLUBS' corporate representative ("CR"), Rick Rodriguez, and DIAZ-PIEDRA. (Doc. 55-3; Doc. 59-1). Thereafter, DIAZ-PIEDRA filed his Motion for Partial Summary Judgment. (Doc. 54; Doc. 55; Doc. 55-1 through 55-4; Doc. 61). In his motion, DIAZ-PIEDRA argued that DIAZ-PIEDRA was an employee—and not an independent contractor—under the FLSA. (Doc. 54). DIAZ-PIEDRA further argued that whether an individual is an employee under the FLSA was based upon six factors outlined in the economic realities test. DIAZ-PIEDRA addressed each factor and presented evidence demonstrating that DIAZ-PIEDRA was an employee and not an independent contractor under the FLSA. (Doc. 54). DIAZ-PIEDRA also presented evidence that DIAZ-PIEDRA was entitled to damages, including mandatory liquidated damages, because THE CLUBS were unable to rebut DIAZ-PIEDRA's evidence concerning damages. (Doc. 54).

THE CLUBS responded to DIAZ-PIEDRA's motion and addressed each of the six factors. THE CLUBS contended it properly classified DIAZ-PIEDRA as an

independent contractor and that DIAZ-PIEDRA was not an employee under the FLSA. (Doc. 58; Doc. 59; Doc. 59-1). Other than argument from its counsel that THE CLUBS acted in good faith and reasonably believed it complied with the FLSA, THE CLUBS presented no evidence to rebut DIAZ-PIEDRA's damages evidence. (Doc. 59; Doc. 59-1). DIAZ-PIEDRA then filed his Reply in Support of Plaintiff's Motion for Summary Judgment and reiterated the factors that demonstrated DIAZ-PIEDRA was an employee under the FLSA and that DIAZ-PIEDRA was entitled to damages. (Doc. 60).

Thereafter, the district court entered its order denying DIAZ-PIEDRA's motion. (Doc. 62). Although the district court concluded that THE CLUBS controlled DIAZ-PIEDRA's work and ability to make a profit, the district court concluded that the remaining factors were either "equipoise" or weighed in favor of THE CLUBS. As a result, the district court denied DIAZ-PIEDRA's motion and dismissed his claims. This timely appeal ensued. (Doc. 63).

## SUMMARY OF ARGUMENT

The district court's denial of DIAZ-PIEDRA's Motion for Partial Summary Judgment and dismissal of his claims must be reversed because the record evidence demonstrated DIAZ-PIEDRA was an employee under the FLSA, and that DIAZ-PIEDRA was entitled to damages, including mandatory liquidated damages.

Courts evaluate six factors pursuant to the economic realities test to determine whether a person is an employee or independent contractor under the FLSA. In sum, those factors include: 1) the employer's control of the manner in which the work is performed, 2) the employee's opportunity for profit or loss, 3) the employee's investment in the equipment and materials to perform the employees task, 4) whether the service rendered by the employee requires a special skill, 5) the permanency and duration of the working relationship, and 6) the extent to which the employee's work is an integral part of the employer's business.

No one factor is determinative. Instead, courts look to the totality of the circumstances to determine whether the employee was economically dependent on the employer, or, rather, in business for himself. When the factors weigh in favor of the worker, the worker is deemed an employee under the FLSA and is entitled to all of the FLSA's broad protections.

THE CLUBS exercised extensive control over DIAZ-PIEDRA's work and ability to make a profit. THE CLUBS' investments in the equipment and materials was more significant that DIAZ-PIEDRA's and there was no special skills required for DIAZ-PIEDRA to perform as a DJ. Significantly, THE CLUBS' were DIAZ-PIEDRA's only source of income as DIAZ-PIEDRA did not work for any other employer while working for THE CLUBS. Moreover, DIAZ-PIEDRA worked exclusively and continuously for THE CLUBS for over five years. Finally, DIAZ-

PIEDRA's service as a DJ was integral to THE CLUBS' business. As such, DIAZ-PIEDRA was an employee under the FLSA. The district court's decision to the contrary was incorrect and therefore must be reversed.

An employee is entitled to damages, including mandatory liquidated damages, if the employee produces evidence that the employee performed work for which the employee was improperly compensated. Under this relaxed standard, the employee is only required to produce evidence showing the amount and extent of work as a matter of inference. Once the employee establishes that the employee has been improperly paid by the employer, the burden shifts to the employer to establish that the employer has records showing the precise amount of work the employee performed, and that the employer acted in good faith and had a reasonable belief that it complied with the FLSA. If the employer fails to produce records, or the records are inaccurate or incomplete, the employee is entitled to damages under the FLSA. Moreover, if the employer fails to demonstrate the employer acted in good faith and with reasonable belief that the employer complied with the FLSA, the employee is entitled to mandatory liquidated damages.

THE CLUBS failed to come forward with sufficient evidence documenting DIAZ-PIEDRA's work. The little evidence THE CLUBS did produce was inaccurate and incomplete. As such, DIAZ-PIEDRA was entitled to damages under the FLSA. Furthermore, THE CLUBS failed to come forward with any evidence

demonstrating it acted in good faith or had a reasonable belief that it complied with the FLSA. Because THE CLUBS failed to come forward with any evidence of good faith and reasonable belief, THE CLUBS did not meet its burden under the FLSA. Consequently, DIAZ-PIEDRA is entitled to damages, including mandatory liquidated damages.

## ARGUMENT

### I. THE DISTRICT COURT'S DECISION MUST BE REVERSED BECAUSE THE RECORD EVIDENCE DEMONSTRATED DIAZ-PIEDRA WAS AN EMPLOYEE UNDER THE FLSA

The district court's grant of summary judgment is reviewed *de novo*. *Levinson v. Reliance Standard Life Ins. Co.*, 245 F.3d 1321, 1325 (11th Cir. 2001); *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1310 (11th Cir. 2013) (appeal from summary judgment reviewed *de novo*). Likewise, whether a person is an employee or independent contractor under the FLSA is a question of law reviewed *de novo*. *Nieman v. National Claims Adjusters, Inc.*, 775 Fed.Appx 622, 623 (11th Cir. 2019); *Scantland*, 721 F.3d at 1311; *Kellogg v. Fannie's Inc.*, 467 F.Supp.3d 1296, 1305 (11th Cir. 2020) (determination of whether a person is an employee or independent contractor is a question of law for the court); *Freund v. Hi-Tech Satellite, Inc.*, 185 Fed.Appx 782, 783 (11th Cir. 2006) (determination of employment status is a question of law, reviewed *de novo*).

DIAZ-PIEDRA was an employee—and not an independent contractor—of THE CLUBS, because, *inter alia*, THE CLUBS, exercised extensive control over DIAZ-PIEDRA's ability to perform and make a profit, THE CLUBS' investment in the equipment and materials for DIAZ-PIEDRA to perform his job was more significant than DIAZ-PIEDRA's, DIAZ-PIEDRA's only source of income was from THE CLUBS, and DIAZ-PIEDRA worked as a DJ for THE CLUBS exclusively and continuously for over five (5) years. Because the record evidence demonstrated DIAZ-PIEDRA was an employee of THE CLUBS, and not an independent contractor, the district court's denial of DIAZ-PIEDRA's Motion for Partial Summary Judgment and dismissal of his claims was wrong. As a result, the district court's decision must be reversed.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To meet this initial burden, the movant must cite the depositions, declarations, or other materials in the record that show there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(c). *See*, *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970) (moving party bears burden of showing absence of genuine issues of material fact); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (party seeking summary judgment bears initial burden); *Clark v. Coats*

*& Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991) (moving party bears initial burden to show materials on file show no genuine issues of material fact); *Sears v. Sheelar*, 2013 WL 2551323 *1, *1 (E.D Oregon June 4, 2013) (movant has initial burden).

While all evidence and inferences in the evidence must be viewed in the light most favorable to the nonmovant, the nonmovant cannot defeat a motion for summary judgment unless the nonmovant presents sufficient evidence demonstrating genuine issues for trial. To do so, the nonmovant "must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Electric Indust. Co., LTD. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (citing *DeLuca v. Atlantic Refining, Co.*, 176 F.2d 421, 423 (CA2 1949)). Instead, the nonmovant must come forward with specific record evidence that demonstrates genuine issues for trial. *Celotex*, 477 U.S. at 324 (nonmovant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997); *Septentriona Domus, LLC v. Keystone Morgan Real Estate*, 406 So.3d 1017, 1019 (Fla. 3d DCA 2025) (nonmovant must come forward with evidence demonstrating genuine issues of material fact). A factual dispute is "material" if it might affect the outcome of the case and is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Shim v. Guechel-Pappas Trust*, 402 So. 3d 386, 390 (Fla. 6th DCA 2024).

Therefore, when the nonmovant fails to come forward with evidence demonstrating genuine issues of fact, summary judgment is mandated. *Celotex*, 477 U.S. at 322 (stating Rule 56(c) mandates entry of summary judgment when nonmovant fails to make the requisite showing); *Larkin v. Envoy Orlando Holdings LLC,* 116 F.Supp.3d 1316, 1318 (M.D. Fla. July 28, 2015) (summary judgment mandated when nonmovant fails to make a showing to establish genuine issues for trial).

**THE FAIR LABOR STANDARDS ACT AND ITS APPLICATION**

In 1938, Congress passed the FLSA to lessen, if not eliminate, the distribution in commerce of goods produced under deficient labor conditions. *Santelices v. Cable Wiring and South Florida Cable Contractors, Inc.*, 147 F.Supp.2d 1313, 1318 (S.D. Fla. March 6, 2001). The purpose of the FLSA was to " 'eliminate low wages and long hours' and 'free commerce from the interferences arising from production of goods under conditions that were detrimental to the health and well-being of workers.' " *Usery v. Pilgrim Equip. Co., Inc.*, 1308, 1310-11 (5th Cir. 1976); *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727 (1947); *Scantland*, 721 F.3d at 1311 (FLSA was passed to "lessen, so far as seemed then practicable, the distribution in commerce of goods produced under subnormal labor conditions") (quoting *Rutherford*); *McFeeley v. Jackson Street Ent., LLC ("McFeeley II")*, 825 F.3d 235, 240 (4th Cir. 2016) (FLSA "protects the rights of those who toil, of those

who sacrifice a full measure of their freedom and talents to the use and profit of others") (quoting *Benshoff v. City of Va. Beach*, 180 F.3d 136, 140 (4th Cir. 1999) (quoting *Tennessee Coal, Iron & R.R. Co. v. Muscodal Local No. 123*, 321 U.S. 590, 597 (1944)).

The protections of the FLSA extend only to employees and are intended to be comprehensive enough to include all employer-employee relationships. *Scantland*, 712 F.3d at 1311; *Tony and Susan Alamo Foundation et. al. v. Secretary of Labor*, 471 U.S. 290, (1985) (FLSA construed "liberally to apply to the furthest reaches consistent with congressional direction"); *Prickett v. DeKalb Cnty.*, 349 F.3d 1294, 1296 (11th Cir. 2003). The FLSA's protections do not include independent contractors. *Scantland*, 712 F.3d at 1311. However, because of the FLSA's remedial purpose, courts have adopted an expansive definition of employee. *Usery*, 527 F.2d at 1308 ("given the remedial purpose of the legislation, an expansive definition of 'employee' has been adopted by the courts"); *Rosario v. 12425, Inc.*, 2014 WL 11910631, *1, *6 (S.D. Fla. July 21, 2014); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1265 (11th Cir. 2008) (FLSA is remedial in nature and construed liberally); *McFeeley II*, 825 F.2d at 240 (keeping with the remedial and humanitarian goals, Congress has applied the FLSA broadly).

Consequently, when there is question concerning whether a worker is an employee versus an independent contractor, courts must err in favor of a broader

reading of employee. *Kellogg v. Fannie's Inc.*, 467 F.Supp.3d 1296, 1315 (N.D. Ga. June 16, 2020) ("[w]hen a disposition in either direction can be justified, the Court must err in favor of a broader reading of employee") (quoting *Hanson v. Trop, Inc., d/b/a Pink Pony, Atlanta*, 167 F.Supp.3d 1324, 1328 (N.D. Ga. March 3, 2016)); *Kinslow v. 5 Star Field Srvs. Grp., LLC*, 2021 WL 3493564, *1, *11 (N.D. Ga. Aug. 9, 2021).

To determine whether a person is an employee or independent contractor for purposes of the FLSA, courts look to the economic reality of the relationship and whether that relationship demonstrates dependence. *Scantland*, 721 F.3d at 1311; *Nieman*, 775 Fed.Appx. at 624. The economic reality is not determined by the label the parties place on the relationship, nor is it determined by the contract governing that relationship. And, certainly, "putting an "independent contractor" label on the alleged employee does not take him from the protections of the FLSA." *Scantland*, 721 F.3d. at 1311 (quoting *Usery*, 527 F.2d at 1312).

Rather, the economic reality of the relationship is controlled by the way one actually acts, and whether the person is in business for himself or dependent upon finding employment in the business of others. *Scantland*, 721 F.3d at 1311-12); *Santelices*, 147 F.Supp.2d at 1319 (courts look to see if the employee depends on the employer for his economic livelihood based upon the parties' actual working relationship); *McFeeley II*, 825 F.3d at 241 (touchstone of the economic realities test

is whether the worker is economically dependent on the business to which he renders service or, as a matter of economic reality, in business for himself); *Mednick v. Albert Ents., Inc.*, 508 F.2d 297, 300 (5th Cir. 1975) ("employees are those who as a matter of economic reality are dependent upon the business to which they render service").

The parties agree that under the economic realities test, this Court uses six factors to guide its inquiry on whether a worker is an employee or independent contractor. These factors include:

> (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;
>
> (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
>
> (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;
>
> (4) Whether the service rendered requires a special skill;
>
> (5) The degree of permanency and duration of the working relationship;
>
> (6) The extent to which the service rendered is an integral part of the alleged employer's business.

*Scantland*, 721 F.3d at 1312. Under the economic realities test, no one factor is determinative. Instead, the overarching focus of the inquiry is economic dependence. *Id*. That is, the six factors are aids—tools to be used to gauge the degree of dependence. *Id*. As a result, courts look at all the surrounding circumstances of the

"whole activity" to determine whether the employee is economically dependent on the employer. *Santelices*, 147 F.Supp.2d at 1318-19 ("the weight of each factor depends on the light it sheds on the putative employee's dependence on the alleged employer, which in turn depends of the facts of the case").

The district court correctly determined THE CLUBS controlled DIAZ-PIEDRA's work and ability to make a profit. (Doc. 62 at 6-7). However, the district court erred when it determined the investment, special skill, permanency, and integral factors weighed in favor of THE CLUBS. Because the district court erred when it determined these factors weighed in favor of THE CLUBS—and then dismissed DIAZ-PIEDRA's claims, the district court's decision must be reversed.

**A. THE CLUBS' INVESTMENT IN THE EQUIPMENT FOR DIAZ-PIEDRA TO PERFORM HIS JOB WAS MORE SIGNIFICANT THAN DIAZ-PIEDRA's AND DEMONSTRATED DIAZ-PIEDRA WAS AN EMPLOYEE UNDER THE FLSA**

THE CLUBS' investment in the equipment and materials for DIAZ-PIEDRA to perform his job as a DJ was more significant than DIAZ-PIEDRA's investment and demonstrated DIAZ-PIEDRA was an employee under the FLSA. When considering the investment factor, courts must evaluate the investment made by the worker in relation to the investment made by the employer. When the employer's investment is more significant, this factor weighs heavily in favor of the worker and suggests economic dependence which is the hallmark of an employer-employee relationship under the FLSA. *Hanson*, 167 F.Supp.3d 1324 at 1331 (noting that when

the gentleman's club maintained the facility, stages and all other infrastructure, the gentleman's club invested far more than the dancer). Although DIAZ-PIEDRA used his laptop, microphone and computer to perform as a DJ, it is undisputed that THE CLUBS' investment in the equipment DIAZ-PIEDRA used to perform his job was more significant. (Doc. 55-4).

For example, THE CLUBS maintained the building and owned the DJ booths in which DIAZ-PIEDRA played music. THE CLUBS did not require DIAZ-PIEDRA to have a music license but instead purchased music licenses with BMI for $372.00 a month and ASCAP for $2,143.00 for the year. (Doc. 55-3 at 57-60). Notably, THE CLUBS paid the same amount for these licenses no matter how many DJs were using the licenses. (Doc. 55-3 at 60). THE CLUBS also owned the speakers, sound system and PA system that DIAZ-PIEDRA used to perform, and THE CLUBS purchased upgrades for the speaker system. (Doc. 55-3 at 60). Moreover, all the wiring for the DJing equipment was installed by THE CLUBS such that all DIAZ-PIEDRA had to do was connect his microphone or laptop to commence work. (Doc. 55-3 at 60).

What is more, THE CLUBS owned the lighting system and insured all of the equipment in the event of fire or malfunction. (Doc. 55-3 at 61-62). When the employer provides all the costly necessities for the worker to perform the job, the worker is dependent upon the employer to perform the worker's duties and is deemed

an employee under the FLSA. *Yilmaz v. Mann*, 2014 WL 1018006, *1, *5 (S.D. Fla. March 17, 2014) ("an independent contractor risks his own independent capital, while an employee has his expenses provided"). It is undisputed that all of the significant investment or risk capital at both locations was provided by THE CLUBS. THE CLUBS provided the building, DJ booth, speaker and PA system, wiring for the systems to work, lighting and insurance to protect the equipment. Like the employees in *Usery*, but for THE CLUBS' significant investment, DIAZ-PIEDRA could not perform. *Usery*, 527 F.2d at 1314 (stating "but for Pilgrim's provision of all costly necessities, these operators could not operate").

Despite THE CLUBS' significant investment compared to DIAZ-PIEDRA's, the district court concluded "this factor is in equipoise and does not weigh in favor of employee or independent contractor." (Doc. 62 at 8). That was wrong.

In *McFeeley II*, the Fourth Circuit explained the proper focus of the investment factor under the economic realities test. In *McFeeley II*, the court stated:

> The focus, as suggested by the wording of these two factors, should remain on the <u>worker's</u> contribution to managerial decision-making and investment <u>relative</u> to the company's.

*Id*. at 244 (emphasis in original); *Manasco v. Best in Town, Inc.*, 2023 WL 5963434, *1, *11 (N.S. Ala. Sept. 13, 2023) (quoting *McFeeley II*). None of DIAZ-PIEDRA's investment contributed to the managerial decision-making or demonstrated DIAZ-PIEDRA was in business for himself as an independent contractor. Instead, like

*McFeeley II*, THE CLUBS' ratio of managerial skill and operational support tilted heavily towards THE CLUBS and precluded any classification of DIAZ-PIEDRA as an independent contractor. *Id*. at 244 (stating "the ratio of managerial skill and operational support tilts too heavily towards the club to support an independent-contractor classification for the dancers).

Simply put, THE CLUBS's investment was more significant than DIAZ-PIEDRA and rendered DIAZ-PIEDRA an employee under the FLSA. The district court's decision to the contrary was wrong, so it must be reversed.

### B. NO SPECIAL SKILLS WERE REQUIRED FOR DIAZ-PIEDRA TO PERFORM AS A DJ

The district court concluded this factor "weighs in favor of independent contractor" status because THE CLUBS did not provide any training and "Plaintiff's own testimony undermines any arguments that DJing does not involve a special skill set." (Doc. 62 at 9). However, upon review of the record—and considering the totality of the circumstances, the record demonstrates DIAZ-PIEDRA was not an independent contractor. First, the district court cited no legal authority to support is finding that a worker is deemed an independent contractor simply because the employer failed to provide training.

Second, although DIAZ-PIEDRA testified that DJing required a lot of skill, DIAZ-PIEDRA's subjective beliefs are unimportant. (Doc. 59-1 at 10-15, 43-44). The proper focus under the economic realities test is "whether the service rendered

requires a special skill." *Scantland*, 721 F.3d at 1318. Hence, the worker's subjective belief about the skill necessary to perform the job is irrelevant. *Yilmaz*, 2014 WL 1018006 at *4 (stating "[t]he parties' subjective belief and expectations, as well as the labels they place on their relationship, are immaterial"). It is important to remember that the FLSA's protections apply broadly to all employees even when the employees decline its protections. *Tony and Susan Alamo Foundation*, 471 U.S. 290 (1985) makes the point. In *Tony and Susan Alamo Foundation*, the Supreme Court stated:

> If an exception to the Act were carved out for employees willing to testify that they performed work "voluntarily," employers might be able to use superior bargaining power to coerce employees to make such assertions, or to waive their protections under the Act.

*Id*. at 302. Importantly, in gentleman's clubs' cases—when evaluating special skills—courts have generally concluded that entertainers who dance in gentleman's clubs are not independent contractors because there is only a "minimal degree of skill required for erotic dancing in these clubs." *Hanson*, 167 F.Supp.3d at 1332 ("courts have routinely found that little "skill"—as the term is used in the FLSA context—is required for exotic dancing"); *Kellogg*, 467 F.Supp.3d at 1312-13; *Hurst v. Youngelson*, 354 F.Supp.3d 1362, 1376 (N.D. Ga. Jan. 28, 2019); *Clincy v. Galardi South Enters., Inc.*, 808 F.Supp.2d 1326, 1347-48 (N.S. Ga. Sept. 7, 2011); *McFeeley II*, 825 F.3d at 244 (stating that "even the skill displayed by the most

accomplished dancers in a ballet company would hardly by itself be sufficient to denote an independent contractor designation”).

Surely, if dancing in a gentleman’s club does not satisfy the “special skill” as the term is used in the FLSA context, then playing music and calling entertainers to the stage similarly does not satisfy the “special skill” as the term is used in the FLSA context. Besides, the record demonstrated DIAZ-PIEDRA was not selected to perform DJing services based upon any special skill he possessed. Instead, DJs at THE CLUBS were selected based upon availability. (Doc. 55 at 7; Doc. 59-1 at 65-66). Though THE CLUBS claimed that on at least one occasion—when it lost electricity—the entertainers were able to dance without music, and that THE CLUBS have a house computer that it used to play music on one occasion, nothing in the record suggests this happens frequently or on a nightly basis. (Doc. 55-3 at 82, 89).

Because DIAZ-PIEDRA did not require any special skills—as the term is used in the FLSA context, the district court’s determination that DIAZ-PIEDRA was an independent contractor was wrong and its decision must be reversed.

### C. BECAUSE THE CLUBS WERE DIAZ-PIEDRA’s ONLY SOURCE OF INCOME, DIAZ-PIEDRA DID NOT WORK FOR ANY OTHER EMPLOYER AND DIAZ-PIEDRA WORKED EXCLUSIVLEY AND CONTINUOUSLY FOR THE CLUBS DURING THE ENTIRE DURATION OF HIS EMPLOYMENT, DIAZ-PIEDRA WAS AN EMPLOYEE UNDER THE FLSA

The record evidence established that THE CLUBS were DIAZ-PIEDRA's sole source of income. (Doc. 55-4). Moreover, DIAZ-PIEDRA did not work for any other gentleman's club or employer. The record established that DIAZ-PIEDRA worked for Cheetah Hallandale from August 2019 to October 2022. During this same period, DIAZ-PIEDRA worked for Cheetah Pompano from May 2019 through November 2024. (Doc. 55-4). Thus, DIAZ-PIEDRA worked for THE CLUBS for over three and five years, respectively. (Doc. 54 at 13-14; Doc. 55-4). Because both of THE CLUBS were DIAZ-PIEDRA's only source of income, DIAZ-PIEDRA did not work for any other employer, and DIAZ-PIEDRA worked exclusively and continuously for THE CLUBS during the entire duration of his employment, DIAZ-PIEDRA was an employee under the FLSA.

Despite the significant degree of permanency and the exclusive, continuous duration of DIAZ-PIEDRA's employment relationship with THE CLUBS, the district court concluded "this factor weighs slightly in favor of independent contractor because Plaintiff was terminable at will and was not prevented from working as a DJ for others." (Doc. 62 at 9). However, the district court's findings were not supported by the record.

DIAZ-PIEDRA made clear that from May 2019 to November 2024 he "was not engaged in DJ services or other performances for any other gentleman's club or any other employer, except Defendant Faneuil and Defendant The Set." (Doc. 55-4 at 3).

While DIAZ-PIEDRA testified he worked for The Set for approximately two months after it was sold to the new owner, DIAZ-PIEDRA's work for the new owner did not automatically convert DIAZ-PIEDRA into an independent contractor under the FLSA. *Hurst*, 354 F.Supp.3d at 1376 ("[w]orking at other clubs does not diminish Plaintiff's relationship with Follies. Many people are employed at two jobs"); *Manasco*, 2023 WL 5963434 at *9 ("[t]he fact that dancers can work at other clubs [does] not distinguish them from countless workers … who are undeniably employees under the FLSA, for example, waiters, ushers, and bartenders-that may simply work at other business") (quoting *McFeeley v. Jackson Street, Ent., LLC ("McFeeley I")*, 47 F.Supp.3d 260, 272 (D.MD. Sept. 15, 2014).

The economic realities test takes into consideration the totality of the facts and circumstances concerning the employer/employee relationship. And, when all the factors demonstrate the employer exercised extensive control over the employee, the employee has no ability to establish economic independence. Thus, an employee's ability to work another job is not outcome determinative in the overall determination of permanency. *McFeeley I*, 47 F.Supp.3d at 272-73 (concluding that an at-will arrangement that could be terminated by either party at any time was not outcome determinative of the permanency factor under the economic realities test).

Because THE CLUBS were DIAZ-PIEDRA's only source of income, DIAZ-PIEDRA did not work for any other employer during the duration of his

employment, and DIAZ-PIEDRA work exclusively and continuously for both of THE CLUBS for more than three and five years, respectively, DIAZ-PIEDRA was an employee under the FLSA.

### D. DIAZ-PIEDRA ROLE AS A DJ WAS INTEGRAL TO BOTH OF THE CLUBS' BUSINESS

In its order, the district court correctly agreed that music was integral to both of THE CLUBS' business. Yet, inexplicably, the district court found "that the DJs' services—choosing the music and announcing dancers—were not integral to the Clubs' business. Consequently, this factor weighs in favor of independent contractor." (Doc. 62 at 10). This was error. *Rosario*, 2014 WL 11910631 at *9 (concluding DJ at the gentleman's club was integral to gentleman's club's business). That a DJ is integral to a gentleman's club's business is logical. In *Rosario* the court explained:

> Plaintiff's argument is a fairly logical one: Stir Crazy is an exotic dance club, the customers come to watch women dance, the dancers require music to dance, and Stir Crazy requires that the DJ provide the music. . . .This factor weighs in Plaintiff's favor. Stir Crazy's business is based on customers attending the club to watch exotic dancers dance to music played by DJ's. There is no dispute that the DJ service is required for the club to properly operate.

*Rosario*, WL 11910631 at *9. *See also*, *Watts v. Club Madonna, Inc.*, 2018 WL 3412988, *1, *1-3 (S.D. Fla. June 25, 2018) (granting summary judgment for DJ when all factors except one weighed in favor of DJ). Undeniably, without a DJ to play the music, THE CLUBS could not operate. *Usery*, 527 F.2d at 1314. Even if

this Court were to consider the one off occasion THE CLUBS claimed to have used its computer radio to play music—and taking all inferences in the light most favorable to THE CLUBS, this factor still weighs in DIAZ-PIEDRA's favor because the remedial purpose of the FLSA required the district court to adopt an expansive reading of employee. *Hanson*, 167 F.Supp.3d at1328 ("[w]hen a disposition in either direction can be justified, the Court must err in favor of a broader reading of employee"); *Usery*, 527 F.2d at 1308 (given the remedial purpose of the legislation, courts must adopt an expansive definition of employee).

Because DIAZ-PIEDRA was an integral part of THE CLUBS' business, the district court erred when it determined this factor weighed in favor of independent contractor status. As such, the district court's decision cannot stand; it must be reversed.

## II. THE DISTRICT COURT'S DECISION MUST ALSO BE REVERSED BECAUSE THE CLUBS FAILED TO REBUT DIAZ-PIEDRA's EVIDENCE THAT DIAZ-PIEDRA WAS ENTITLED TO DAMAGES, INCLUDING MANDATORY LIQUIDATED DAMAGES

The appropriate standard of review for a mixed question of law and fact depends on whether answering it entails primarily legal or factual work. *Bufkin v. Collins*, 604 U.S. 369, 382 (2025). In the FLSA context, what constitutes good faith on the part of the employer and whether the employer had reasonable grounds to believe the employer did not violate the FLSA are mixed questions of law and fact decided

by the court. 29 C.F.R. § 790.22(b)-(c); *McGuire v. Hillsborough Cnty., FL*, 511 F.Supp.2d 1211, 1214 (M.D. Fla. Jan. 17, 2007); *Dybach v. State of Fla. Dep. Of Corrections*, 942 F.2d 1562, 1566 (11th Cir. 1991) (employer must show good faith and reasonable belief to the court's satisfaction). However, once an employer has demonstrated good faith and reasonable belief, the district court's decision to award liquidated damages is reviewed for abuse of discretion. *Id.*; *Gordils v. Ocean Drive Limousines, Inc.*, 671 Fed.Appx. 731, 732 (11th Cir. 2016) (district court's decision to award liquidated damages under FLSA reviewed for abuse of discretion).

After the district court concluded DIAZ-PIEDRA was an independent contractor under the FLSA, the district court denied DIAZ-PIEDRA's motion for partial summary judgment and dismissed DIAZ-PIEDRA's claims. Presumably, the district court did not reach damages. (Doc. 62). Nevertheless, the district court treated DIAZ-PIEDRA's motion as full motion for summary judgment. (Doc. 62 at 1). Therefore, should this Court determine the district court considered damages as part of the district court's decision, DIAZ-PIEDRA addresses DIAZ-PIEDRA's entitlement to damages to demonstrate THE CLUBS failed to present sufficient evidence to rebut DIAZ-PIEDRA's evidence on damages, including mandatory liquidated damages. As such, DIAZ-PIEDRA is entitled to judgment as a matter of law.

### A. THE CLUBS FAILED TO PRESENT SUFFICIENT EVIDENCE TO REBUT DIAZ-PIEDRA's EVIDENCE THAT DIAZ-PIEDRA WAS ENTITLED TO DAMAGES UNDER THE FLSA

An employee who brings a claim for unpaid wages and liquidated damages under the FLSA has the initial burden of proving that the employee performed work for which the employee was not properly compensated. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946); *Allen v. Board of Pub. Educ. For Bibb Cnty.*, 495 F.3d 1306, 1315 (11th Cir. 2007); *Kinslow*, 2021 WL 3493564 at *9; *Santelices*, 147 F.Supp.2d at 1328; *Hanson*, 167 F.Supp.3d at 1335.

The FLSA requires employers to keep accurate records of their employees' wages, hours, and other conditions and practices of employment. *Allen*, 495 F.3d at 1315. This is so because the employer is in the best position to know and produce information concerning the work performed by the employee. *Id*. at 1315. (stating employer is in the superior position to know and produce the most probative information about the nature and amount of work performed by the employee).

But, when the employer fails to keep records, or the records are inaccurate or incomplete, the employee's initial burden is relaxed. In this situation, the employee can meet its burden by proving the employee "has in fact performed the work for which he was improperly compensated" and by producing "sufficient evidence to show the amount and extent of the work as a matter of inference." *Mt. Clemens*, 328 U.S. at 687. This relaxed standard is in keeping with the remedial nature of the FLSA

and therefore is not an onerous burden. *Id*. (explaining that the "remedial nature of this statute and the great public policy which it embodies, however, militates against making the burden an impossible hurdle for the employee"). Thus, an employee's own testimony about the nature, amount and extent of the work performed is sufficient to meet this relaxed burden. *Allen*, 495 F.3d at 1316 (finding that the employee's testimony which raised questions about the employer's records was sufficient to meet the relaxed burden); *Santelices*, 147 F.Supp.2d at 1329-30 (employee's testimony approximating the amount of hours employee worked sufficient to meet burden).

Once the employee presents evidence under the relaxed burden, the burden then shifts to the employer to come forward with evidence of the precise amount of work performed or evidence to negative the reasonableness of the inference drawn from the employee's evidence. *Mt. Clemens*, 328 U.S. at 687-88. If the employer fails to produce such evidence, the court can award damages to the employee, even though the result be only approximate. *Id*. at 688. That is, because the employer is in the best position to produce evidence concerning the nature and extent of work the performed by the employee, the "employer cannot be heard to complain that the damages lack exactness and precision of measurement that would be possible had he kept records" in compliance with the FLSA. *Id*.

DIAZ-PIEDRA presented sufficient evidence about the nature, amount and extent of his work at THE CLUBS. (Doc. 31; Doc. 33 at 2-4; Doc. 55 at 3-5; 55-4; 59-1). The burden then shifted to THE CLUBS to show the precise amount of work DIAZ-PIEDRA performed to negate the reasonableness of the inferences drawn from DIAZ-PIEDRA's evidence. However, THE CLUBS failed to produce sufficient evidence in rebuttal. Concerning the Hallandale location, THE CLUBS failed to produce any records or information whatsoever concerning DIAZ-PIEDRA's work. At the Pompano location, the only evidence THE CLUBS produced was records from September 2024 through November 2024. THE CLUBS failed to produce any records or information for DIAZ-PIEDRA's employment at THE CLUBS before September 2024. It is undisputed that DIAZ-PIEDRA began working for the Pompano location in May 2019. (Doc. 55-4 at 1).

Because THE CLUBS failed to produce records for the entire duration of DIAZ-PIEDRA's employment, its evidence was inaccurate and incomplete. As such, THE CLUBS failed to present sufficient evidence to rebut DIAZ-PIEDRA's claim for damages. As a result, this Court must award damages to DIAZ-PIEDRA. *Mt. Clemens*, 328 U.S. at 688 (if employer fails to produce evidence, court may award damages).

## B. THE CLUBS ADMITTED IT DID NOT COMPLY WITH THE FLSA AND THEN FAILED TO COME FORWARD WITH ANY OTHER EVIDENCE TO REBUT DIAZ-PIEDRA's ENTITLEMENT TO MANDATORY LIQUIDATED DAMAGES

To avoid paying liquidated damages, THE CLUBS had the burden to come forward with evidence that THE CLUBS' failure to properly compensate DIAZ-PIEDRA under the FLSA was made in good faith, and that THE CLUBS had reasonable grounds to believe it did not violate the FLSA. THE CLUBS admitted it did not consult with a lawyer or any other authority to determine its compliance with the FLSA. Moreover, THE CLUBS failed to produce any other evidence demonstrating it acted in good faith or had a reasonable basis to believe it did not violate the FLSA. Because THE CLUBS admitted it failed to comply—and failed to come forward with any other evidence of good faith and reasonable belief, THE CLUBS cannot meet their burden. As such, DIAZ-PIEDRA is entitled to mandatory liquidated damages.

Under the FLSA, any employee who violates section 206 or 207 shall be liable to the employee in the amount of the employee's unpaid wages and an additional equal amount as liquidated damages. § 29 U.S.C. 216(b); *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1272 (11th Cir. 2008). However, the Portal to Portal Act, 29 U.S.C. §§ 251-62, provides a safe harbor for an employer. *Id*. Under this safe harbor provision, an employer can avoid the imposition of liquidated damages if the employer can show that the employer acted in good faith and under reasonable belief that it was in compliance with the FLSA. *Id*.

The burden is on the employer to prove its entitlement to the safe harbor provision. *Id*. The burden is a difficult one, with double damages being the norm and single damages the exception. *Reich v. Southern New England Telecomms. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997); *Hernandez v. Schloss*, 2020 WL 1228644, *1, *2 (S.D. NY March 13, 2020). Furthermore, when the employer fails to prove good faith and reasonableness, liquidated damages are mandatory. *McGuire*, 511 F.Supp.2d at 1214. (liquidated damages are mandatory absent a showing of good of faith); *Dybach*, 942 F.2d at 1566-67 ("[a]bsent … a showing [of both the subjective and objective elements of the good faith defense], liquidated damages are mandatory").

Even when the employer shows good faith and reasonable belief, the district court, in its discretion, can still award liquidated damages. *Thompson v. Sawyer*, 678 F.2d. 257, 282 (D.C. Cir. 1982); *Sanders v. Elephant Butte Irrigation Dist. of New Mexico*, 112 F.3d 468, 471 (10th Cir. 1997); *Soler v. G & U, Inc.*, 628 F.Supp. 720, 725 (S.D. N. Y. 1986); *Muston v. MKI Sys., Inc.*, 951 F.Supp. 603, 612 (E.D. Va. Jan. 10, 1997).

THE CLUBS admitted it never received any training concerning employees or independent contractors in connection with the minimum wage. (Doc. 55-3 at 22-23). Moreover, THE CLUBS admitted it did not consult with an administrative authority to determine whether it was in compliance with the FLSA. (Doc. 55-1 at

4; Doc. 55-2 at 4; Doc. 55-3 at 22-23). THE CLUBS' corporate representative ("CR") testified that "I am sure I have" and named counsel that represented the CR during the deposition as the lawyer THE CLUBS consulted with concerning employment practices. (Doc. 55-3 at 22-23). However, the CR's testimony directly contradicted THE CLUBS' responses to request for admissions. When asked to admit that THE CLUBS did not consult with an attorney, THE CLUBS unequivocally stated: "Admit, however, the business model was predicated on industrial standards in place for independent contractors." (Doc. 55-1 at 4; Doc. 55-2 at 4). Neither THE CLUBS nor the CR explained this contradiction. (Doc. 55-3; 58). Regardless, conforming to industry-wide practice is never sufficient to demonstrate good faith under the FLSA. *Hernandez*, 2020 WL 1228644 at *3 (" 'simple conformity with industry-wide practice' fails to demonstrate good faith under the FLSA").

The only other evidence THE CLUBS came forward with to demonstrate good faith was argument from THE CLUBS' counsel. In response to DIAZ-PIEDRA's motion for partial summary judgment, THE CLUBS' counsel argued that: "Defendants can meet this burden by showing that they fully and fairly evaluated all relevant elements to determine that the Plaintiff was an independent contractor prior to this action having been filed." (Doc. 58 at 15). However, argument from counsel is not evidence and cannot be relied upon by the court on summary judgment. *Bryant*

*v. U.S. Steel Corp.*, 428 Fed.Appx. 895, 897 (11th Cir. 2011) (counsel's argument is not evidence); *Skyline Corp. v. NLRB*, 613 F.2d 1238, 1337 (5th Cir. 1980); *MHG Hotels, LLC v. Studio 78, LLC*, 2021 WL 8894454, *1, (S.D. Fla. May 25, 2021) (counsel's unsupported argument is not competent evidence on which court may properly enter summary judgment).

Because THE CLUBS admitted it did not comply with the FLSA and failed to come forward with any evidence demonstrating good faith or reasonable belief, THE CLUBS did not meet its burden. That being so, DIAZ-PIEDRA is entitled to mandatory liquidated damages as a matter of law. *Celotex*, 477 U.S. at 322 (stating Rule 56(c) mandates entry of summary judgment when nonmovant fails to make the requisite showing); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994) ("[i]f no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted").

## CONCLUSION

For the reasons stated and upon the authorities cited in the Amended Initial Brief, the district court's decision must be reversed and remanded with directions for the district court to enter judgment in favor of DIAZ-PIEDRA.

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 11th Cir. R. 32-4, this document contains 9,730 words.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

**/s/ Earl I. Higgs, Jr.**
Earl I. Higgs, Jr., Esq.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing furnished via email to: Luke Lirot, Esq. and Rachel Ricks, Esq., 2240 Belleair Rd., Suite 190, Clearwater, FL 337645 at luke2@lirotlaw.com and rachel@lirotlaw.com this 30th day of June 2026.

**/s/ Earl I. Higgs, Jr.**
Earl I. Higgs, Jr., Esq.
Fla. Bar No.: 0256160
**HIGGS LAW, P.A.**
1060 Woodcock Road, #109
Orlando, Florida 32803
Telephone: (407) 459-7921
Primary email: ehiggs@higgslawpa.com
Secondary email: ehenry@higgslawpa.com
Attorneys for Appellant